UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In the Matter of the Search of a two story brick and stone structure with a composite roof and a walk-out basement floor, located at 102 East Springfield Avenue, Union, Missouri | ) ) ) ) ) | Case No. 4:15-mj-3217 NCC |
| In the Matter of the Seizure of all monies, funds, and financial instruments deposited in or credited to account numbers 1014616444, 1014635044, 1014635007, in the name of Watson Rd Holding Corporation D/B/A Stuart B. Millner & Assoc.; and account numbers 3009275220, and 1007280211 in the name of Stuart B. Millner and Bren S. Millner, all held at Bank of Sullivan. | ) ) ) ) ) ) ) ) | Case No. 4:15-mj-3218 NCC |
| In the Matter of the Seizure of all monies, funds, and financial instruments deposited in or credited to account number 152315124544, in the name of Columbus Business Center, LLC; account number 152315126036, in the name of Stuart B. Millner & Associates D/B/A Watson Road Holding Corporation; and account number 152309368867, in the name of Watson Road Holding Corporation; all held at U.S. Bank. | ) ) ) ) ) ) ) | Case No. 4:15-mj-3219 NCC |
| In the Matter of the Seizure of all money, funds, and financial instruments deposited in or credited to account number 3003006433, in the name of Garvin Industrial Associates, held at United Bank of Union. | ) ) ) ) | Case No. 4:15-mj-3220 NCC |
| In the Matter of the Search of One red Lexus sport utility vehicle, license plate number YH1 G6S. | ) ) | Case No. 4:15-mj-3223 NCC |
| In the Matter of the Seizure of 2006 Dodge Dakota Quad Cab SLT, VIN: 1D3HW48N56S639472. | ) ) | Case No. 4:15-mj-3263 NCC |
| In the Matter of the Seizure of 2009 Ford Mustang, VIN: 1ZVHT80N095137585. | ) ) | Case No. 4:15-mj-3264 NCC |
| In the Matter of the Seizure of 2012 Lexus RX350, VIN: 2T2ZK1BA4CC084732. | ) ) | Case No. 4:15-mj-3265 NCC |

**THE UNITED STATES' MEMORANDUM IN
OPPOSITION TO STUART B. MILLNER'S AND STUART B. MILLNER &
ASSOCIATES' MOTION TO UNSEAL APPLICATIONS FOR WARRANTS**

COMES NOW the United States, by and through its counsel, Richard G. Callahan,

United States Attorney for the Eastern District of Missouri, and Richard E. Finneran, Assistant

United States Attorney for said District, and presents its Memorandum in Opposition to Movants Stuart B. Millner's and Stuart B. Millner & Associates'[1] Motion to Unseal Applications for Warrants (the "Motion"). For the reasons set forth below, the United States respectfully requests that the Motion be denied.

### SUMMARY AND INTRODUCTION

Movants have failed to establish that they have a right to pre-indictment access to the sealed warrant applications in the above-referenced actions that overrides the United States' compelling interest in maintaining the integrity of its ongoing investigation. As a threshold matter, it appears that Movants may not have taken the proper procedural avenue for intervening in the instant case in order to seek to have the seal lifted. But even if Movants corrected course, the applications presented to this Court at the time of the issuance of the warrants, together with the additional information submitted *ex parte* in connection with this memorandum, provide more than an adequate basis for the Court to continue sealing the applications as initially ordered. Finally, to the extent that Movants contend that they require access to the applications in order to permit them to file a motion for return of property under Rule 41 for any of the funds or vehicles seized under the warrants, such a motion would be futile because the Movants have an adequate remedy at law, under administrative and civil forfeiture procedures, against each such asset. As such, the government's interest in maintaining the integrity of its ongoing investigation heavily outweighs any need Movants might assert to have pre-indictment access to the applications.

---

[1] While the Motion was filed in the name of Stuart B. Millner & Associates, Missouri Secretary of State records reflect that Stuart B. Millner & Associates is a fictitious registration for Watson Road Holding Corporation. The United States does not object to the Motion's being amended be interlineation to name Watson Road Holding Corporation as the proper movant.

**BACKGROUND**

On August 28, 2015, this Court issued warrants to search for and seize evidence from the offices of Watson Road Holding Corporation, which does business as Stuart B. Millner & Associates ("SBMA"), and a nearby vehicle, as well as three warrants to seize funds in nine bank accounts. *See* Case Nos. 4:15-mj-3217 NCC, 4:15-mj-3218 NCC, 4:15-mj-3219 NCC, 4:15-mj-3220 NCC, and 4:15-mj-3223 NCC. On September 16, 2015, the Honorable Thomas C. Mummert issued warrants for five vehicles titled to SBMA. *See* Case Nos. 4:15-mj-06241 TCM, 4:15-mj-06242 TCM, 4:15-mj-06243 TCM, 4:15-mj-06244 TCM, and 4:15-mj-06245 TCM. Finally, on October 8, 2013, this Court issued seizure warrants for three additional vehicles. *See* Case Nos. 4:15-mj-03263 NCC, 4:15-mj-03264 NCC, and 4:15-mj-03265 NCC.[2] The next day, October 9, 2015, Movants filed the Motion, seeking to have Court unseal the warrant applications in Case Nos. 4:15-mj-3217 NCC, 4:15-mj-3218 NCC, 4:15-mj-3219 NCC, 4:15-mj-3220 NCC, 4:15-mj-3223 NCC, 4:15-mj-03263 NCC, 4:15-mj-03264 NCC, and 4:15-mj-03265 NCC (together, the "Applications").

**DISCUSSION**

## I.   As a Threshold Matter, the Court Must Confront Procedural and Jurisdictional Questions Left Unaddressed by the Motion

Before reaching the merits of the Motion, this Court must first confront the question of whether Movants have chosen the proper vehicle to bring this matter before the Court, such that

---

[2] Although the Motion suggests that "one of the[se] vehicles is not owned by Stuart Millner or SBMA," Mot. at 1, in fact two of the vehicles are not titled to Stuart Millner or SBMA: the 2009 Ford Mustang and the 2012 Lexus RX350, which were the subjects of Case Nos. 4:15-mj-3264 NCC and 4:15-mj-3265 NCC, respectively. (The United States is further informed by counsel for Millner that the 2009 Ford Mustang had been sold to a third party prior to the issuance of this Court's seizure warrant, and thus the United States anticipates that the warrant for its seizure may ultimately be returned unexecuted.)

it would have subject matter jurisdiction to hear the Motion. While the United States does not seek to challenge the jurisdiction of this Court, the procedural avenue chosen by Movants raises significant jurisdictional questions that the Court is bound to address. In the course of researching the issues on the merits, the United States discovered that the preponderance of case law concerning third-party unsealing motions reflects that such motions are ordinarily initiated as original civil actions in the district court before being referred to a magistrate for disposition. Indeed, in one case, a district court saw fit to vacate a magistrate judge's ruling for lack of jurisdiction on a motion in precisely the same posture as the instant case. In addition, as a procedural matter, Movants have failed to identify any authority that would permit them to intervene in the instant matters in order to seek unsealing of the Applications. Even though the United States does not dispute this Court's jurisdiction, this Court retains an independent obligation to confirm its jurisdiction before proceeding. This section therefore discusses the various authorities that might assist this Court in making that assessment.

An application for a search warrant is procedure that "involves an *ex parte* application by the government and *in camera* consideration by the judge or magistrate." *In re Search Warrant for Secretarial Office Outside of Office of Gunn*, 855 F.2d 569, 572 (8th Cir. 1988) ("*Gunn I*"). Although it does not appear that any provision of the Federal Rules of Criminal Procedure permits a motion by a third party to unseal a search warrant application, the Eighth Circuit has previously recognized, in a case involving warrants issued in this District, that such motions may be brought as miscellaneous civil actions in a district court. *See Gunn I*, 855 F.2d at 572 (noting that motion by third party to unseal seizure warrant was treated as miscellaneous matter and referred to district court judge); *cf. Matter of Search of 4801 Fyler Ave.*, 879 F.2d 385, 387–88

(8th Cir. 1989) ("*Fyler*") (recognizing that, where motion for return of property is made before initiation of criminal proceedings, court's jurisdiction is equitable in nature). Movants have not followed that procedure here. Rather than initiate a separate miscellaneous civil action, Movants have elected to file the Motion under one of the several case numbers used by the Clerk to docket the Applications.

Movants cite no authority that would permit them to proceed in such a fashion. Federal Rule of Civil Procedure 24 permits a court to grant intervention to a non-party under certain circumstances, but no similar rule of criminal procedure permits intervention by third parties in matters involving search warrant applications. *See In Search of S & S Custom Cycle Shop*, 372 F. Supp. 2d 1048, 1051 (S.D. Ohio 2003) ("Absent the existence of a criminal action, an individual simply has no basis for bringing a motion to unseal an affidavit under the Criminal Rules."). Local Rule 83-13.05, upon which Movants rely, permits a third party "having a sufficient privacy interest in the search warrant information, or the property or evidence that is the object of acquisition by the government" to file an ex parte motion ***to seal*** a search warrant application, it does not authorize a motion by such a party to ***unseal*** an application. Nor does Rule 83-13.05 provide any explicit guidance as to whether such a motion should be filed under the matter number assigned to the application or as a miscellaneous civil matter, as described by the Eighth Circuit in *Gunn I*.

In addition, in several of the cases cited by Movants, where a criminal case had not yet commenced, the case was treated as a separate civil matter rather than filed under the matter number assigned to the *ex parte* warrant application. *See Certain Individuals, John Does I–V, Who Are Emps. of McDonnell Douglas Corp. v. Pulitzer Publ'g Co.*, 895 F.2d 460, 463 (8th Cir.

5

1992) ("*Gunn II*"); *In re Search of 14416 Coral Gables Way*, 946 F. Supp. 2d 414, 418 n.3 (D. Md. 2011); *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584, 586 (D. Md. 2004). Other cases identified by the United States adopt a similar procedural posture. *See, e.g.*, *Times Mirror Co. v. United States*, 873 F.2d 1210, 1211–12 (9th Cir. 1989) (noting that motions to unseal were filed as "original actions in the . . . District Courts"); *Matter of Searches of Semtex Indus. Corp.*, 876 F. Supp. 426, 427 (E.D.N.Y. 1995) (treating motion as original civil action); *Matter of Flower Aviation of Kansas, Inc.*, 789 F. Supp. 366, 368 (D. Kan. 1992) (district court ruled, as original matter, on motion to unseal affidavits placed under seal by magistrate judge); *cf. Baltimore Sun v. Goetz*, 886 F.2d 60, 62 (4th Cir. 1989) (noting that movants proceeded by seeking writ of mandamus from district court that would have commanded magistrate judge to unseal warrants). Movants' chosen procedure thus seems contrary to the preponderance of available precedent. *But see Matter of Search of a Residence Which Is Situated on a Cul-de-Sac at 14905 Franklin Drive*, 121 F.R.D. 78, 79 (1988) (E.D. Wisc. 1988) (magistrate court holding that it had "inherent power" to unseal warrant it had ordered sealed).

    While the United States would not object to this Court's jurisdiction to hear the instant motion were it properly docketed, it is of course this Court's independent obligation to confirm its subject matter jurisdiction before proceeding to rule on the Motion.[3] By addressing the question of jurisdiction, the United States simply hopes to avoid the unfortunate result in *In*

---

[3] 28 U.S.C. § 636(c)(1) also permits a magistrate judge to exercise jurisdiction over a civil matter upon the consent of the parties. While the United States would readily consent to such jurisdiction, § 636(c)(2) suggests that the Clerk must first docket such a matter as an originall civil matter before such procedures may be implemented. *Cf. S & S Custom*, 372 F. Supp. 2d 1048, 1052 (declining to imply consent by the parties to magistrate's jurisdiction based upon their litigation conduct).

*Search of S & S Custom Cycle Shop*,, 372 F. Supp. 2d 1048 (S.D. Ohio 2003), where the U.S. District Court for the Southern District of Ohio vacated a magistrate judge's order on a motion to unseal a search warrant application upon finding that the magistrate judge lacked subject matter jurisdiction to entertain the motion without referral from the district court. *Id.* at 1053. The court observed that 28 U.S.C. § 636 does not expressly grant magistrate judges the power to adjudicate such matters, and that "no provision in the Court's General Order of Reference . . . provide[d] a general referral to the magistrate judges of th[e] Court." *Id.* at 1052. Under such circumstances, the court held, the magistrate judge was without subject matter jurisdiction, causing it to vacate the order, dismiss the motion, and require the movant to refile the motion on the court's civil docket. *Id.* at 1053. It noted that the same treatment is "routinely" accorded by federal courts for a motion for return of property under Rule 41 "[w]here no other criminal proceeding, other than the execution of a search warrant, has been initiated." *Id.* at 1050.

As in *S & S Custom*, the United States is unaware of any rule or order which would confer jurisdiction on this Court to render a final disposition of the Motion, absent a referral from the District Court. Local Rule 73-11.01, which sets forth the "General Authority of United States Magistrate Judges," does not appear to be dispositive on the question. The rule authorizes

> [e]ach United States Magistrate Judge appointed by this Court . . . to exercise all powers and perform all duties conferred expressly or by implication upon magistrate judges by, and in accordance with, procedures now or hereafter set forth in the United States Code, rules promulgated by the Supreme Court, the local rules of this Court, and the orders of this Court . . . and to make such further orders as may be incidental or necessary to the completion of their duties.

Despite a diligent inquiry, the undersigned has not been able to identify any statute, rule, or order of the district court that extends to this Court authority over third-party motions to unseal search warrant applications. The fact that Movants have not cited any authority which would permit

7

them to intervene in the instant matters lends further credence to the notion that the motion should have been filed as an original matter in the district court. While it is conceivable that the power to rule on such a motion might be deemed "conferred . . . by implication upon magistrate judges" by some such order or "incidental or necessary to the completion" of the Court's duties under Local Rule 73-11.01 (and the United States would not object to the Court's viewing a ruling on the Motion as such), the United States respectfully suggests that the safer course would be to require the matter to be refiled as an original matter with the District Court, at which point the United States would not object to the matter being referred to this Court for disposition. Such a course would also avoid the procedural uncertainty that would attend this Court's ruling in the event that either party might seek review of the Court's order before either the District Court or the Eighth Circuit Court of Appeals. Otherwise, in its current posture, the finality of any order the Court might issue could be placed into doubt. *Cf. S & S Custom*, 372 F. Supp. 2d at 1052–53.

## II. The Affidavits Presented to This Court at the Time of the Issuance of the Warrants, Together with the Additional Information Submitted *Ex Parte* in Connection with This Memorandum, Provide an Adequate Basis for the Court to Continue Sealing the Applications as Ordered

The United States has submitted herewith a separate, *ex parte* memorandum under seal detailing, as factual matter, why there are satisfactory grounds to justify the continued sealing of the applications. But before this Court can assess the adequacy of those grounds, it must first identify the proper standard for assessing the instant motion. While Movants cite numerous district court decisions from other circuits, this Court's assessment of the issues raised by Movants is governed by the Eighth Circuit's decision in *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569 (8th Cir. 1988) ("*Gunn I*"), which remains the Eighth Circuit's authoritative pronouncement regarding third parties' rights to access warrant

8

applications prior to the initiation of criminal proceedings. [4] As *Gunn I* and numerous cases since have recognized, continued sealing is appropriate while the United States is actively engaged in an ongoing investigation.

While *Gunn I* held that the public has a First Amendment right of access to search warrant materials, it recognized that the right is a qualified one. *Id.* at 573. Important to the instant case, the *Gunn I* court held that an "on-going investigation" is the sort of "compelling government interest" that justifies continued sealing of warrant application materials before an indictment is returned. *Id.* at 574. The court recognized that, given the fact that the warrant application materials "describe[d] in considerable detail the nature, scope and direction of the government's investigation and the individuals and specific projects involved," there was "a

---

[4] Movants have relied on non-mandatory authority in order to support their claim "that, rooted in the Fourth Amendment, targets of a search warrant have a pre-indictment right of access to search-warrant materials." Mot. at 4 (citing one unpublished Fourth Circuit case and four district court cases). But the Eighth Circuit in *Gunn I*, has already reached the conclusion that any member of the public, target or not, has a qualified First Amendment right of access to such records, and it has applied a standard to such claims that is no less favorable to Movants than that employed in the cases Movants cite. Thus, rather than confront the question, which would be one of first impression for this Court, whether the Fourth Amendment provides an equal (or perhaps less comprehensive) right of access to warrant applications as the right the Eighth Circuit has already recognized under the First Amendment, the United States will analyze the issues raised in the Motion under the standard set forth in *Gunn I*.

The Motion fails to mention *Gunn I*, citing only the Eighth Circuit's subsequent decision in *Certain Individuals, John Does I–V, Who Are Employees of McDonnell Douglas Corporation v. Pulitzer Publishing Co.*, 895 F.2d 460 (8th Cir. 1992) ("*Gunn II*"), where the court ordered the same warrant applications unsealed. In *Gunn II*, the court emphasized the government no longer opposed the unsealing of the documents and "[t]hus, denial of the public's, and the newspaper's, qualified right of access to these documents can no longer be justified by a compelling governmental interest in protecting an on-going criminal investigation." *Id.* at 463. Here, by contrast, the government's investigation has been in an overt stage for only six weeks, and substantial additional investigation will be required before any grand jury proceeding can be concluded. In addition, the quote Movants select from *Gunn II* is taken out of context, *see* Mot. at 6, inasmuch as the court in *Gunn II* was articulating the standard to be applied "where privacy interests in wiretapped conversations are asserted," a situation not present here. *Id.* at 467.

substantial probability that the government's on-going investigation would be severely compromised if the sealed documents were released." *Id.* It also upheld the district court's determination that redaction of the affidavits was not practical in light of the fact "[v]irtually every page contain[ed] multiple references to wiretapped telephone conversations or to individuals other than the subjects of the search warrants or reveals the nature, scope and direction of the government's on-going investigation." *Id.* Under these circumstances, the court held, the district court's order continuing the sealing of the documents was proper. *Id.* at 574. Judge Bowman concurred to emphasize his view that, when the government is still investigating and no grand jury has yet returned an indictment, the government's interest in keeping search warrant documents under seal is "overwhelming":

> [T]he justification for sealing these documents for a limited time is abundantly clear. The investigation is still in progress. It is large and complex. The government has not yet obtained any indictments. Based on these circumstances and our examination of the sealed material, I am convinced that the sealing order serves important public interests, including the public interest in knowing the facts produced by an uncompromised investigation, the public interest in the successful prosecution of anyone who has [committed the crimes being investigated], and the public interest in fairness to any innocent persons (and there may well be some) who are shown by the documents as being linked to the investigation.

*Id.* at 575 (Bowman, J., concurring).

Numerous other courts echo Judge Bowman's concerns about allowing warrant applications to be unsealed while the government's criminal investigation is ongoing.[5] The

---

[5] *See, e.g.*, *Times Mirror*, 873 F.2d at 1213; *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64–65 (4th Cir. 1989) (following *Times Mirror*); *All Funds on Deposit at Wells Fargo Bank in San Francisco*, 643 F. Supp. 2d 577, 587 (S.D.N.Y. 2009) (finding that "the sensitivity of the Government's ongoing investigation and the potential that premature disclosure may thwart further seizures are compelling reasons" justifying continued sealing); *In re Sealed Search Warrants*, 2008 WL 5667021 (N.D.N.Y. 2008) (finding that risk that unsealing "would disclose

concerns weighing against pre-indictment disclosure were aptly stated by the court in *Times Mirror*:[6]

> [C]omplete openness would undermine important values that are served by keeping some proceedings closed to the public. Openness may, for example, frustrate criminal investigations and thereby jeopardize the integrity of the search for truth that is so critical to the fair administration of justice. Traditionally, for example, grand jury proceedings have been kept secret even though they are judicial proceedings which are closely related to the criminal fact-finding process. Certainly, the public's interest in self-governance and prevention of abuse of official power would be served to some degree if grand jury proceedings were opened. The same might be said of jury deliberations and the internal communications of this court. But because the integrity and independence of these proceedings are threatened by public disclosures, claims of 'improved self-governance' and 'the promotion of fairness' cannot be used as an incantation to open these proceedings to the public. Nor will the mere recitation of these interests open a particular proceeding merely because it is in some way integral to our criminal justice system.

---

to the subjects the full range of potential criminal violations being investigated, the evidence obtained by the United States prior to the searches, and the information which the subjects and other individuals had provided to the United States or had failed or declined to provide" justified continued sealing); *S & S Custom*, 372 F. Supp. 2d at 1051–52 ("The better reasoned cases have held that no right to inspect sealed affidavits for search warrants exists *under the Constitution or the Criminal Rules*, prior to the initiation of a criminal proceeding against the movant." (emphasis in original)); *Matter of Searches of Semtex Indus. Corp.*, 876 F. Supp. 426, 429 (E.D.N.Y. 1995) ("[I]t is reasonable to believe that the need for secrecy continues in a complex, multi-state investigation prior to indictment."); *In re Search Warrant Executed February 1, 1995*, 1995 WL 406276 (S.D.N.Y. 1995) (ordering sealing in light of pending grand jury investigation); *Flower Aviation*, 789 F. Supp. at 368 (continuing sealing where unsealing "would tend to reveal the nature and scope of the government's ongoing investigation" and holding that "identities of various persons mentioned in the affidavits should be kept confidential to protect their privacy interests and safety . . . especially . . . because an indictment has not been issued"); *14905 Franklin Drive*, 121 F.R.D. at 80 (finding "good cause" to continue sealing in order to avoid "compromis[ing] the government's need for secrecy" during an ongoing investigation).

[6] While the United States acknowledges that the *Times Mirror* court made these remarks in the course of rejecting the Eighth Circuit's holding in *Gunn I* that the First Amendment created a qualified right of access to search warrant applications, the statements are nonetheless persuasive in expressing the concerns weighing against pre-indictment unsealing of such applications.

873 F.2d at 1213. The court went on to recognize that the concerns motivating grand jury secrecy are equally present in the case of search warrant applications:

> We believe that secrecy is no less important to the process of investigating crime for the purpose of obtaining evidence to present to a grand jury. First, and most obviously, if the warrant proceeding itself were open to the public, there would be the obvious risk that the subject of the search warrant would learn of its existence and destroy evidence of criminal activity before the warrant could be executed. Additionally, if the proceeding remained closed but the supporting affidavits were made public when the investigation was still ongoing, persons identified as being under suspicion of criminal activity might destroy evidence, coordinate their stories before testifying, or even flee the jurisdiction.

> We are not alone in our view that search warrant proceedings, like grand jury proceedings, require secrecy. The reasons why the policy behind grand jury secrecy apply with equal force to warrant proceedings was ably expressed by Judge Harvey, in denying a request for access to Operation Ill-Wind warrant materials filed in the United States District Court for Maryland:

> > If proceedings before and related to evidence presented to a grand jury (including subpoenas, documents and even hearings before the court for the immunization of witnesses) can be kept secret, *a fortiori,* matters relating to a criminal investigation leading to the development of evidence to be presented to a grand jury may also be kept secret. Indeed, search warrant proceedings are one step back from the convening of a grand jury.

*Id.* at 1214–15. The *Times Mirror* court therefore concluded that "the information disclosed to the magistrate in support of the warrant request is entitled to the same confidentiality accorded other aspects of the criminal investigation." *Id.* at 1214. It further approved of the practice of "[b]oth the magistrate in granting the original sealing order and the district court in reviewing such orders" of being "highly deferential to the government's determination that a given investigation requires secrecy and that warrant materials be kept under seal." *Id*. Because the same concerns identified in *Gunn I*, *Times Mirror*, and the other cases cited above are present in this case, the United States respectfully suggests that the Applications should be kept under seal

12

pending the completion of the criminal investigation.[7]

### III.  Movants' Professed Desire to File a Motion for Return of Property Under Federal Rule of Criminal Procedure 41 Is Unpersuasive, Since Any Such Motion Would Be Procedurally Barred

Movants claim that the reason for their motion is to establish grounds to file a motion for return of property under Federal Rule of Criminal Procedure 41. But the law is well established that relief under Rule 41 is equitable in nature, and any such movant must therefore establish the absence of an adequate remedy at law. *Fyler*, 879 F.2d at 387–88 (recognizing that, where motion for return of property is made before initiation of criminal proceedings, court's jurisdiction is equitable in nature). Here, Movants have such an adequate remedy at law: they may file a claim against each of the seized items that will be subject to administrative forfeiture proceedings. *See* 18 U.S.C. § 983(a)(2)(A) (permitting "[a]ny person claiming property seized in an [administrative] forfeiture proceeding may file a claim with the appropriate official after the seizure"). If they assert such a claim, the United States will then be required, absent an extension of time, to initiate a legal action to forfeit the property in this Court within 90 days after the claim is filed. 18 U.S.C. § 983(a)(3)(A).

Numerous courts have held that the presence of administrative and subsequent judicial forfeiture proceedings represents an adequate remedy at law that displaces the district court's

---

[7] Although obviously this Court is bound by the Eighth Circuit's holdings, the United States notes that *Gunn I* is contrary to the law in every other circuit that has considered the question. *See In re Search of Fair Finance*, 692 F.3d 424, 433 (6th Cir. 2012); *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64–65 (4th Cir. 1989); *Times Mirror Co. v. United States*, 873 F.2d 1210, 1213–19 (9th Cir. 1989); *see also United States v. Corbitt*, 879 F.2d 224, 228–29 (7th Cir. 1989) (finding no First Amendment right of access to judicial records); *In re Four Search Warrants*, 945 F. Supp. 1563, 1567 (N.D. Ga. 1996) (rejecting reasoning of *Gunn I*). In the event that this case reaches a posture in which the holding of *Gunn I* could be reconsidered, the United States reserves the right to argue that it should be overruled.

equitable jurisdiction to order the return of property.[8] For that same reason, Movants are unable to show "irreparable injury," as required to obtain equitable relief, if relief is not granted, insofar as they maintain the ability to recover their property, intact, through ordinary forfeiture proceedings. *See Fyler*, 879 F.2d at 377 (requiring Rule 41 movant to show irreparable injury).

While Movants may seek to distinguish these cases on the basis that, here, the United States has not yet commenced administrative forfeiture proceedings by sending them notice, that is only because notice is not yet required by statute. *See* 18 U.S.C. § 983(a)(1)(A) (requiring

---

[8] *See United States v. Clymore*, 245 F.3d 1195, 1201 (10th Cir. 2001) (holding that a Rule 41 motion for return of property is properly denied if the property is subject to forfeiture) (citing *United States v. Chambers*, 192 F.3d 374, 377 (3d Cir. 1999)); *United States v. One 1974 Learjet*, 191 F.3d 668, 673 (6th Cir. 1999) (indicating that once administrative forfeiture commences, the claimant's only remedy is to contest the forfeiture on the merits, not a Rule 41 motion); *Ibarra v. United States*, 120 F.3d 472, 475–76 (4th Cir. 1997) (noting that once the Government initiates administrative forfeiture proceedings, the district court lacks subject matter jurisdiction over an action for return of property); *United States v. One 1987 Jeep Wrangler*, 972 F.2d 472, 479 (2d Cir. 1992) (holding the district court loses subject matter jurisdiction to adjudicate claims regarding the seizure once the government commences administrative forfeiture proceedings); *United States v. U.S. Currency, $83,310.78*, 851 F.2d 1231, 1235 (9th Cir. 1988) ("[W]hen a civil forfeiture proceeding is pending, there is no need to fashion an equitable remedy to secure justice for the claimant"); *United States v. Faulkner*, 2011 WL 1882380, at *3 (W.D. Okla. May 17, 2011) (rejecting Rule 41(g) motion filed in criminal case on the ground that defendant's remedy was to contest the forfeiture in the administrative forfeiture proceeding); *United States v. Abbas*, 2008 WL 1815796, at *8 (C.D. Cal. Apr. 17, 2008) (finding the government can defeat a Rule 41(g) motion by commencing administrative forfeiture proceedings after the motion is filed); *Haltiwanger v. United States*, 494 F. Supp. 2d 927, 930 (N.D. Ill. 2007) (dismissing Rule 41(g) motion because claimant contested administrative forfeiture proceeding); *United States v. Assorted Computer Equipment*, 2004 WL 784493, at *1 (W.D. Tenn. Jan. 9, 2004) (stating that claimant cannot seek return of his property pursuant to Rule 41(g) once the government has commenced either administrative or civil judicial forfeiture proceedings); *Baranski v. Fifteen Unknown Agents*, 195 F. Supp. 2d 862, 868–69 (W.D. Ky. 2002) (holding that court has no jurisdiction to consider Rule 41 motion raising Fourth Amendment issues where pending civil forfeiture action gives claimants adequate remedy at law); *United States v. U.S. Currency in the Amount of $146,800*, 1997 WL 269583, at *5 (E.D.N.Y. Apr. 28, 1997) (finding that a Rule 41 motion is not an appropriate vehicle for challenging the legality of a seizure where claimant can pursue an adequate remedy at law by contesting the forfeiture in the civil forfeiture case).

notice to be sent no more than 60 days after the date of seizure). It would skirt the purpose and structure of the statute for a court to permit Movants to shorten this statutory timeframe by filing a motion for return of property before the government is even required to commence administrative forfeiture proceedings. *Cf. United States v. $200,255 in U.S. Currency*, 2006 WL 1687774, *4-6 (M.D. Ga. 2006) ("Congress [did not] intend[] for a claimant . . . to begin the claim process by presenting a claim . . . before formal notice of the initiation of forfeiture is provided. . . . Congress intended to allow the agency an opportunity to process the seizure, and confirm with a written notice that forfeiture would be pursued, before being subjected to a claim for the return of the property."); *see also* Stefan D. Cassella, *Asset Forfeiture Law in the United States* § 3-8(b), 133 (2d ed. 2013) ("Allowing a claimant to shorten [§ 983's] deadlines artificially by filing a Rule 41(g) motion—and thus forcing the Government to commence a forfeiture proceeding before it was required to do so—would undermine [the] compromise [struck by Congress between the interests of law enforcement and the property rights of property owners] and tilt the balance in a way that Congress did not intend.").[9]

Beyond the necessity of irreparable injury and an inadequate remedy at law, the *Fyler* court also recognized that equitable relief is only appropriate in a pre-indictment context where the movant can show "callous disregard of the [F]ourth [A]mendment." *Fyler*, 879 F.2d at 377. Even if they were given access to the Applications, there is no possibility that Movants would be able

---

[9] To the extent that Movants desire to file a motion for return of property for items other than those seized for forfeiture (i.e., documents seized in the execution of the search warrant), the United States has previously requested that SBMA designate any materials that it deemed necessary to the continuation of its ongoing business and has, at Mr. Martin's request, already returned copies of some such records. It has also indicated to Mr. Martin that it will return all electronic devices and media seized during the warrant once it has completed creating forensic images of those items.

to make such a showing. The seizures in this case were all conducted pursuant to warrants duly issued by this Court upon a determination of probable cause. Far from establishing "callous disregard" for Movants' Fourth Amendment rights, that is clear evidence of good faith on the part of the seizing agents. *See United States v. Leon*, 468 U.S. 897, 922 (1984).

This Court must also be wary of the risk that defendants will use motions for return of property, as well as motions such as the instant one, in order to circumvent to the ordinary restrictions on criminal discovery under the Constitution and the Federal Rule of Criminal Procedure. *Cf. Kaley v. United States*, 134 S. Ct. 1090, 1102 (2014) (expressing concern that defendants might misuse pretrial probable cause hearings as means of gaining premature access to criminal discovery). The same concerns that motivated the Supreme Court in *Kaley* are even more present in the case of a Rule 41 motion, insofar as a putative defendant is entitled to *no discovery* whatsoever prior to the initiation of criminal proceedings, whereas the indicted defendants in *Kaley* were at least entitled to the discovery provided for in the Federal Rules. If, per *Kaley*, indicted defendants are not entitled to use proceedings to return property to gain premature access to criminal discovery, it follows *a fortiori* that unindicted individuals should not be able to do so either. *Cf. Eastwood v. United States*, 2008 WL 5412857, *4 (E.D. Tenn. Nov. 14, 2008) (noting that, even in the absence of an indictment, a court "may grant or continue a stay of a civil proceeding when 'the government is conducting an active parallel criminal investigation'" (quoting *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1038–39 (W.D. Mich. 2007))); *see also id.* (collecting cases); *Baranski*, 195 F. Supp. 2d at 870.

CONCLUSION

Even assuming that the Motion is properly before the Court, Movants have failed to establish any particularized need for pre-indictment access to the Applications supporting the warrants. The United States, meanwhile, has provided an adequate basis to justify the continued sealing of the warrants pending the completion of its investigation. The United States therefore respectfully requests that the Motion be denied. In the event that the Court instead elects to grant the Motion, the United States respectfully requests that it stay its order pending appeal in order "[t]o preserve the status quo and to prevent [the] irreparable harm to the government" that would follow from the Applications being made public. *See In re Search Warrant for Second Floor Bedroom*, 489 F. Supp. 207, 212 (D.R.I. 1980).


Dated: October 19, 2015                    Respectfully submitted,

                                           RICHARD G. CALLAHAN
                                           United States Attorney

                                           */s/ Richard E. Finneran*
                                           RICHARD E. FINNERAN, #60768MO
                                           Assistant United States Attorney
                                           111 South 10th Street, Suite 20.333
                                           Saint Louis, Missouri 63102
                                           Telephone:  (314) 539-2200
                                           Facsimile:   (314) 539-2777
                                           *richard.finneran@usdoj.gov*

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2015 the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/ Richard E. Finneran
RICHARD E. FINNERAN, #60768MO
Assistant United States Attorney
